CDAS

LEO M. LICHTMAN
Partner
(212) 497-0913
llichtman@cdas.com

July 15, 2026

**VIA ECF**
Hon. LaShann DeArcy Hall, USDJ
United States District Court, Eastern District of New York
225 Cadman Plaza East, Courtroom 4H North
Brooklyn, NY 11201

**Re:** ***LIB & Co. Inc. v. Bethel International*, No. 1:26-cv-01780-LDH-LKE**
**Letter Concerning Defendant's Anticipated Motion to Dismiss First Amended Complaint**

Dear Judge Hall:

This firm represents Defendant Bethel International ("Bethel") in the above-referenced case. Bethel writes seeking a pre-motion conference in connection with its anticipated Rule 12(b)(6) motion to dismiss the First Amended Complaint (ECF No. 13) ("FAC") filed by Plaintiff LIB & Co., Inc. ("Plaintiff"). Far from curing Plaintiff's pleading deficiencies, the FAC establishes they are incurable.

## I. Plaintiff Has Agreed to Withdraw All Allegations and Claims Regarding the "Fiori Design"

As an initial matter, Plaintiff has agreed to withdraw its allegations and claims regarding the Fiori design. This comes after its counsel was put on notice, pursuant to Rule 11, that Bethel had been selling the allegedly infringing products since 2022—***three years*** before Plaintiff even created the Fiori design. FAC Ex. H. Plaintiff's claims as to its other designs at issue—the Belluno and Sorrento designs—fare no better. Rather, Plaintiff's decision to bring suit without bothering to confirm that its own design is even original signals its broader effort to suppress lawful competition under the guise of IP enforcement.

## II. Plaintiff Still Fails to State a Claim for Copyright Infringement

The FAC still fails to plausibly allege the elements of copyright infringement: (1) ownership of a valid copyright, and (2) unauthorized copying. *Jorgensen v. Epic/Sony Recs.*, 351 F.3d 46, 51 (2d Cir. 2003).

No set of facts can make up for Plaintiff's inability to allege ownership of the exclusive right allegedly infringed. The alleged works originate from Canada, such that Canadian law governs what rights Plaintiff owns. *See Itar Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82, 90 (2d Cir. 1998). Under the Canadian Copyright Act, Art. 64 disclaims the reproduction right for mass-produced useful articles such as the designs at issue. *See https://laws-lois.justice.gc.ca/eng/acts/c-42/section-64.html*. The law does not simply govern infringement—Canada passed this law to limit the "scope of copyright" itself for such products. *See French v. Royal Canadian Legion*, 2024 FCA 63 *available at https://decisions.fca-caf.gc.ca/fca-caf/decisions/en/item/521376/index.do*. As a matter of law, Plaintiff cannot exclude others from reproducing its designs. *See Canadian Standards Ass'n v. P.S. Knight Co., Ltd.*, 112 F.4th 298, 304 (5th Cir. 2024) (copying of Canadian model code not actionable); *see also Bridgeman Art Library, Ltd. v. Corel Corp.*, 25 F. Supp. 2d 421, 426 (S.D.N.Y. 1998) (works not copyrightable under UK law).

Even setting aside this fatal flaw, the FAC fails to cure Plaintiff's deficient infringement allegations. Plaintiff still fails to put Bethel on notice of *when* it contends its rights were violated—a basic pleading

requirement under Rule 8. *See, e.g., Richardson v. Commerce Media Holdings, LLC*, 2025 WL 1938705, at *2 (S.D.N.Y. July 15, 2025) (citing cases). This omission appears to be by design. Plaintiff knows it cannot seek statutory damages or attorney's fees under the Copyright Act if alleged infringement occurred prior to the registration dates of Plaintiff's designs in late 2025. FAC, Ex. B, E; *Steele v. Bell*, 2014 WL 1979227, at *8 (S.D.N.Y. Mar. 28, 2014) (Section 412 "imposes a bright-line rule, barring the recovery of statutory damages for infringement occurring after registration if that infringement is part of an ongoing series of infringing acts and the first act occurred before registration"). Yet Plaintiff is aware that Bethel's products alleged to infringe the designs were being marketed and sold online well before registration, as reflected in Plaintiff's own previously-sent demand letter dated December 18, 2024. *See* **Ex. A**.[1]

Had Plaintiff properly complied with Rule 8, the allegations would still fail under *Twombly*/*Iqbal*. Even under U.S. law, useful articles such as the lighting designs at issue are "largely unprotected by the Copyright Act." *Jovani Fashion, Ltd. v. Cinderella Divine, Inc.*, 808 F. Supp. 2d 542, 549 (S.D.N.Y. 2011). And "[w]hen a work contains both protectable and unprotectable elements, a court should apply the more discerning observer test by attempting to eliminate the unprotectable elements from consideration and comparing only the protectable elements for substantial similarity." *Wolstenholme v. Hirst*, 271 F. Supp. 3d 625, 638-39 (S.D.N.Y. 2017). The FAC still fails to allege which ***protectable*** elements of the designs were copied at all, apart from bare reference to "selection, coordination and arrangement." FAC ¶ 12, 25, 38. This is insufficient. *See, e.g., Fortgang v. Pereiras Architects Ubiquitous LLC*, 230 F. Supp. 3d 77, 84-85 (E.D.N.Y. 2017) (generalized notions of where to place functional design elements not protectible); *Ritani, LLC v. Aghjayan*, 880 F. Supp. 2d 425, 443 (S.D.N.Y. 2012) ("[N]either the Initial nor Amended Complaint contains any allegations as to any particular elements of the rings that are claimed to be protected, or that the expressions or the elements are 'substantially similar.'"). Side-by-side comparisons further demonstrate meaningful differences. For instance, Bethel's fixtures alleged to infringe the Belluno design feature a modern, faceted, multi-cut glass shade that bear no resemblance to the Belluno design's "tulip shape with three petals." FAC ¶¶ 19, 27; *compare* FAC Ex. D *with* Ex. F. And Bethel's fixtures alleged to infringe the Sorrento design feature a textured, open pattern which leaves the lightbulb exposed, a far cry from the Sorrento design's "extended portions appearing to be folded onto one another with wavy edges." FAC ¶¶ 6, 14; *compare* FAC Ex. A *with* Ex. C.

## III. Plaintiff Still Fails to State a Claim for Trade Dress Infringement or Unfair Competition

Despite adding new allegations, Plaintiff still fails to (i) articulate what elements comprise its trade dress; (ii) plausibly allege any facts to support secondary meaning; or (iii) plausibly allege any facts to support a likelihood of confusion. (ECF No. 11, at 2-3); *See Nat'l Lighting Co., Inc. v. Bridge Metal Indus. LLC*, 601 F. Supp. 2d 556, 562-63 (S.D.N.Y. 2009).

While the FAC purports to specify the elements of the alleged trade dress, it falls well short of setting forth a "precise expression of the character and scope of the claimed trade dress." *Tentandtable.com, LLC v. Aljibouri*, 2025 WL 959656, at *8 (W.D.N.Y. Mar. 31, 2025) ("[C]ourts will ... be unable to shape narrowly-tailored relief if they do not know what distinctive combination of ingredients deserves protection."); *Nat'l Lighting Co.*, 601 F. Supp. 2d at 562. The FAC refers to the "overall design created by the combination and arrangement of the individual light fixtures," but does not identify any "combination or arrangement" that it contends is distinctive, nonfunctional, and consistent across its products. FAC ¶¶

[1] This Court may take judicial notice of the fact that Plaintiff was aware of conduct giving rise to its claims at least as early as December 2024, when the demand letter was sent. *See Fullsend, Inc. v. Nelk, Inc.*, 2023 WL 2710593, at *4 (E.D.N.Y. Mar. 30, 2023); *Nano Dimension Ltd. v. Murchinson Ltd.*, 681 F. Supp. 3d 168, 192 n.7 (S.D.N.Y. 2023).

6, 19. And Plaintiff's own images demonstrate that, even within the same collections, Plaintiff's lighting fixtures are offered in various configurations and shapes, with little consistency. *Id.* ¶¶ 4, 17; Ex. A, D.

Even if Plaintiff's trade dress was properly defined, the FAC still does not plausibly allege secondary meaning.[2] Plaintiff's allegedly "large" sales numbers, "widespread marketing and advertising," distribution through "hundreds of well-known retailers and partners," and "extensive and unsolicited media coverage" are utterly devoid of factual support, rendering them wholly conclusory. *Bubble Genius*, 239 F. Supp. 3d at 598 ("[A]bsent from the pleadings are facts concerning actual consumer surveys, unsolicited media coverage, sales success, specific advertising expenditures, or specific acts by others, in addition to plaintiff [sic], to plagiarize the plaintiff's trade dress."); *see also Tentandtable.com*, 2025 WL 959656, at *11-13. Plaintiff has furthermore only used the alleged trade dress since 2023, FAC ¶¶ 5, 18, and not even exclusively at that, making secondary meaning highly unlikely, particularly given the absence of other facts. *See Bubble Genius*, 239 F. Supp. 3d at 600 (exclusive use of less than five years weighed against finding of secondary meaning).[3] Complaints with far more factual support are routinely deemed deficient. *See, e.g., Wonderful Co. LLC v. Nut Cravings Inc.*, 2022 WL 4585344, at *3 (S.D.N.Y. Sept. 29, 2022); *Carson Optical, Inc. v. Prym Consumer USA, Inc.*, 11 F. Supp. 3d 317, 343-44 (E.D.N.Y. 2014); *Urban Grp. Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*, 2013 WL 866867, at *3-5 (S.D.N.Y. Mar. 8, 2013); *Heptagon Creations, Ltd. v. Core Grp. Martketing LLC*, 2011 WL 6600267, at *8 (S.D.N.Y. Dec. 22, 2011), *aff'd*, 507 F. App'x 73 (2d Cir. 2013). The USPTO notably agrees as well. In denying Plaintiff's applications, the USPTO noted that the "applied for mark consists of a nondistinctive product design or nondisinctive features of a product design." *See* **Ex. B**. It is telling that, despite being on notice of the USPTO's findings since February, Plaintiff still fails to allege a single fact to support secondary meaning.

Finally, Plaintiff still fails to allege likelihood of confusion. (ECF No. 11, at 3.) Once again, Plaintiff formulaically states that Bethel's sales are likely to confuse consumers, without an inkling of factual support to demonstrate that Bethel's product offerings are likely to deceive an appreciable number of consumers as to source or origin under the Second Circuit's well-established *Polaroid* factors. *See, e.g., Wonderful Co.*, 2022 WL 4585344, at *4; *Wolstenholme*, 271 F. Supp. 3d at 643-44; *Ahmed v. GEO USA LLC*, 2015 WL 1408895, at *2 (S.D.N.Y. Mar. 17, 2015); *Heptagon Creations*, 2011 WL 6600267, at *8; *Nat'l Lighting Co.*, 601 F. Supp. 2d at 563-64.

For the same reasons, and those previously stated (ECF No. 11, at 3), Plaintiff's pendent state claims also fail.

---

[2] Plaintiff remarkably alleges that its alleged product trade dress is "inherently distinctive," FAC ¶¶ 7, 20, 33, but the Supreme Court, and a mountain of cases following it, make clear that product designs are "distinctive, and therefore protectible, ***only upon a showing of secondary meaning.***" *See Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 216 (2000) (emphasis added). Plaintiff can only proceed on claims over unregistered trade dress if it alleges "facts that would support a plausible claim that its trade dress has acquired secondary meaning," such as facts concerning (1) advertising expenditures; (2) consumer studies linking the mark to a source; (3) unsolicited media coverage of the product; (4) sales success; (5) attempts to plagiarize the mark; and (6) length and exclusivity of the mark's use. *Bubble Genius LLC v. Smith*, 239 F. Supp. 3d 586, 598 (E.D.N.Y. 2017).

[3] Because Plaintiff must establish that the product designs achieved secondary meaning "by the time the allegedly infringing product came on the market," *Easy Spirit, LLC v. Skechers U.S.A., Inc.*, 515 F. Supp. 3d 47, 61 (S.D.N.Y. 2021), its failure to once again specify when it contends the alleged infringement commenced is a critical omission not only for its copyright claims, *supra*, Section I, but for its trade dress claims as well.

Respectfully Submitted,

*/s/Leo M. Lichtman*
Leo M. Lichtman

*Attorney for Bethel International*

cc: All Counsel of Record (via ECF)